## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL ALLEN, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 07-2037-KHV** |
| **PHILL KLINE, individually and in his** ) | |
| **official capacity as District Attorney of** ) | |
| **Johnson County, Kansas,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

### MEMORANDUM AND ORDER

Plaintiffs Michael Allen, Jennifer Barton, Norah Clark, Bryan Denton, John Fritz, Kristiane Gray, Steve Howe and Kendra Lewison bring suit against Phill Kline individually and in his official capacity as District Attorney of Johnson County, Kansas.  Under 42 U.S.C. § 1983, plaintiffs allege that by terminating their employment and refusing to participate in Johnson County's employee grievance process, defendant violated their constitutional rights under the First and Fourteenth Amendments to the United States Constitution.  Specifically, plaintiffs claim that (1) defendant deprived them of liberty and property without procedural due process in violation of the Fourteenth Amendment (Count I); (2) defendant violated their rights to free association under the First Amendment (Count II); and (3) defendant violated their rights to free speech under the First Amendment (Count III).  See Amended Complaint (Doc. #21) filed February 23, 2007 at 21-30. This matter is before the Court on defendant's Motion To Dismiss Amended Complaint (Doc. #25) filed March 9, 2007. Defendant asserts that he is entitled to qualified immunity on plaintiff's claims. For reasons stated below, the Court sustains defendant's motion in part.

**Legal Standards**

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well pleaded facts in plaintiffs' complaint and views them in a light most favorable to plaintiffs.  See Zinermon v. Burch, 494 U.S. 113, 118 (1990); Swanson v. Bixler, 750 F.2d 810, 813 (10th Cir. 1984).  Rule 12(b)(6) does not require detailed factual allegations, but the complaint must set forth the grounds of plaintiffs' entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  In other words, plaintiffs must allege facts sufficient to state a claim which is plausible – rather than merely conceivable – on its face.  See id. at 1974.  The Court makes all reasonable inferences in favor of plaintiffs.  See Zinermon, 494 U.S. at 118; see also Rule 8(a), Fed. R. Civ. P.; Lafoy v. HMO Colo., 988 F.2d 97, 98 (10th Cir. 1993).  The Court, however, need not accept as true those allegations which state only legal conclusions.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  The issue in reviewing the sufficiency of plaintiffs' complaint is not whether plaintiffs will prevail, but whether they are entitled to offer evidence to support their claims.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved.  See Hall, 935 F.2d at 1110.

Although summary judgment provides the typical vehicle for asserting qualified immunity, defendant may also raise the defense in a motion to dismiss.  See Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004).  Asserting the defense in this fashion, however, subjects defendant to a more challenging standard of review than would apply on summary judgment.  See id. (citing Lone Star

Indus., Inc. v. Horman Family Trust, 960 F.2d 917, 920 (10th Cir. 1992) (12(b)(6) motion viewed with disfavor and rarely granted)).  Qualified immunity shields from liability government officials performing discretionary functions "if their conduct does not violate clearly established rights of which a reasonable government official would have known."  Perez v. Unified Gov't of Wyandotte County/Kan. City, Kan., 432 F.3d 1163, 1165 (10th Cir. 2005).  In evaluating qualified immunity in the context of a motion to dismiss, the Court makes two determinations.  First, the Court determines whether plaintiffs have alleged the deprivation of a constitutional right.  See Peterson, 371 F.3d at 1202 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Second, the Court decides whether that right was clearly established at the time of the alleged violation.  See id. (citing Saucier, 533 U.S. at 201).  Plaintiffs bear the burden of alleging facts sufficient to allow the Court to make these determinations.  See id. at 1202-03; see also Perez, 432 F.3d at 1165.  If plaintiffs sufficiently allege the deprivation of a clearly established constitutional right, qualified immunity will not protect defendant.  A valid qualified immunity defense will relieve defendant of individual liability.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  It will not, however, shield defendant from claims against his official capacity or from claims for prospective relief.  See id. at 819 n.34; see also Meiners v. Univ. of Kan., 359 F.3d 1222, 1233 n.3 (10th Cir. 2004).

**Facts**

Plaintiffs' amended complaint alleges the following facts:

Plaintiffs Allen, Barton, Clark, Fritz, Gray, Howe and Lewison worked as attorneys in the office of the Johnson County District Attorney.  Denton worked as chief investigator in the same office.  All were exemplary employees with outstanding performance records.  On January 8, 2007, defendant Kline took office as District Attorney of Johnson County, Kansas.  Early that day, Eric

K. Rucker, Chief Deputy District Attorney, notified plaintiffs that their employment was terminated effective immediately.  Defendant discharged plaintiffs because they did not have personal or political affiliations with him.  Plaintiffs did not have an opportunity to contact witnesses and victims or to make arrangements regarding immediate hearings deadlines and trials in their cases.

On January 10, 2007, plaintiffs gave defendant dispute resolution forms which requested grievance hearings under Johnson County policies and procedures.  The dispute resolutions forms stated as follows:

> I was dismissed without warning, without the benefit of property rights granted in . . . Johnson County Human Resources Policies and Procedures, and as a result deprived me [sic] of property without due process of law in violation of Section 1 of the 14th Amendment to the United States Constitution.  To the extent that my affiliation with former District Attorney Paul Morrison contributed to the decision, I have been deprived of my freedom of association in violation of the 14th Amendment to the United States Constitution.  In addition to the violations of my constitutional rights, the County a) breached an implied contract to act fairly and not terminate the employment of persons who satisfactorily perform their job . . . and b) breached a covenant of good faith and fair dealing regarding employees whose positions are necessary for public safety and the administration of the criminal justice system, and c) violated public policy by interfering with the administration of the criminal justice system through the immediate terminations of persons essential to the operation of the criminal justice system, and d) failed to properly supervise employees, Phill Kline and Eric Rucker by allowing them to recklessly terminate employees contrary to the public interest, and e) to the extent that the actions of Phill Kline and Eric Rucker were motivated in whole or in part by my enforcement of criminal and/or juvenile statutes of the State of Kansas [sic].

Exhibits 9-16, Amended Complaint (Doc. #21).

The day after plaintiffs submitted their dispute resolution forms to defendant, the Johnson County Board of Commissioners passed a resolution which required defendant to confirm whether he would participate in grievance hearings and abide by the results thereof.  The resolution stated that unless defendant agreed to do so, the county would be unable to provide grievance hearings to plaintiffs.

4

The following day, January 12, 2007, defendant sent a letter to Donald Jarrett, Johnson County counselor. The letter stated that defendant would not participate in grievance hearings or abide by the results thereof. The letter also cited Johnson County policies and quoted therefrom as follows:

> Notwithstanding my complete discretion under the law to hire, fire, set salaries and manage the office my office did follow all applicable policies in the decision to terminate the eight persons who have filed grievances. My staff and I thoroughly reviewed the County policies and procedures as they may be applicable to County employees. * * *

> [I]t is my opinion and the opinion of my legal staff that, although I am not required to do so, I have complied with the County's policy regarding personnel. * * *

> Please understand as an executive officer of the Tenth Judicial District and a resident of Johnson County, I fully intend to follow all County policies that do not conflict with my statutory duties, ethical responsibilities and state law.

Amended Complaint (Doc. #21) at 6.[1] Defendant also issued a press release which referred to and quoted Johnson County policies.

Johnson County has established human resources policies and procedures which to the fullest extent possible apply to all employees, including elected officials, civil service employees and appointed officials. See Policy 102, Plaintiffs' Exhibit 17B. The policies provide detailed procedures for corrective action regarding performance issues, beginning with initiating and structuring corrective action, followed by coaching, a performance improvement plan, final performance management plan and demotion or transfer, and ending with termination of employment. See Procedure 410-2, Plaintiffs' Exhibit 17F. With regard to termination of employment, the policy states as follows:

---

[1] Plaintiffs' complaint quotes portions of defendant's letter to Jarrett. See Amended Complaint (Doc. #21) ¶ 28. The record does not contain a copy of the complete letter.

5

> An employee may be terminated from employment with the County due to job performance issues when those issues are severe, when the impact upon the department/agency is substantial, when the performance issues have been addressed on multiple occasions, or when the employee has not demonstrated a willingness or ability to improve his/her performance.  In addition, an employee will be terminated from employment with the County due to performance issues when the performance improvement process has been fully utilized and sufficient improvement has not been achieved by the employee.

Id.[2]

Johnson County provides a dispute resolution procedure under which employees may request review of a dispute concerning adverse employment action.  See Policy 413, Plaintiffs' Exhibit 17G. Under the policy, if an employee believes that he or she has been unfairly discharged, the employee may request review by filing a dispute resolution request form which sets forth the basis for his or her belief that the action is unjust, unfair or inconsistent with county policy.  See Procedure 413-1, Plaintiffs' Exhibit 17H.  Within five days of the adverse action, the employee must provide the form to his or her department/agency leader, who shall immediately notify and forward the form to the department of human resources, along with the department/agency's written response to the complaint.  See id.  The policy directs human resources to schedule an administrative review panel within 10 business days, but states that human resources may extend the time limits for good cause at any time.  See id.  The administrative panel may uphold, modify or reverse the action and such decision shall be final.  See id.

With regard to the hearing procedure, the policy states as follows:

a.   The hearings conducted pursuant to this Procedure shall be of an informal nature.

_____

[2]      The policy also contains disclaimers that employees are at will and that no contract of employment exists between the county and its employees.  See Plaintiffs' Exhibit 17A.

6

b.      The Panel will conduct a fair and impartial hearing.

c.      A representative of the Legal Department and a representative of the Department of Human Resources shall attend hearings to advise and assist the decision-maker(s) and facilitate the presentation and exchange of information.

d.      Ordinarily, the department/agency, then the employee, may present any information, statements, documents, witnesses or evidence that they wish the Panel to consider.  The Panel, department/agency representative, the employee, and the representatives of the Legal and Human Resources Departments may ask questions of any of the participants to clarify the issues.

e.      The department/agency and the employee may make a brief final statement summarizing their respective positions.

f.      The employee has the right to representation at the hearing.  If an employee is represented by counsel, he/she shall notify the Department of Human Resources prior to the hearing.

g.      The parties shall be courteous and maintain decorum at all times.

Id.

Johnson County policies were in effect continuously, throughout plaintiffs' employment. Plaintiffs relied on the policies and based on county custom and practice, plaintiffs understood and expected that they would have the substantive and procedural protections of the policies.  During their employment, plaintiffs were treated as employees of Johnson County in various ways, including (1) payment of their wages; (2) designated official holidays; (3) inclusion in e-mails and other communications transmitted to all county employees; and (4) obligation to abide by Johnson County policies.  During their employment, plaintiffs and the county operated as though plaintiffs' employment would not be terminated if they performed their job duties satisfactorily and abided by county policies.

The termination of plaintiffs' employment was unjust, unfair and inconsistent with Johnson

7

County policies and practices.  Under Johnson County policy, plaintiffs will not be eligible for re-hire by the county unless the termination decisions are reversed and their personnel records are corrected to reflect that they are eligible for re-hire.

The dismissals have created a cloud over the ability of Allen, Barton, Clark, Fritz, Gray, Howe and Lewison to obtain licenses to practice law in another state.  Lewison has obtained employment in Missouri and must become licensed to practice law in that state.  The Missouri bar application asks whether the applicant has been involuntarily terminated from employment and requires further elaboration in a separate set of questions.

## Analysis

Plaintiffs claim that defendant deprived them of liberty and property interests without due process and violated their rights to free association and free speech.  Defendant asserts that he is entitled to qualified immunity on plaintiffs' claims.  In evaluating defendant's motion to dismiss on the basis of qualified immunity, the Court first determines whether plaintiffs have alleged the deprivation of a constitutional right.  See Peterson, 371 F.3d at 1202.  If so, the Court decides whether that right was clearly established at the time of the alleged violation.  See id.  A right is clearly established if Supreme Court or Tenth Circuit case law exists on point, or if the clearly established weight of authority from other courts has found a constitutional violation based on similar actions.  See DeSpain v. Uphoff, 264 F.3d 965, 979 (10th Cir. 2001). To be clearly established,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

8

Anderson v. Creighton, 483 U.S. 635, 640 (1987) (citations omitted).

## I.      Fourteenth Amendment Claims

Plaintiffs claim that defendant deprived them of property and liberty without due process.[3] The Fourteenth Amendment guarantees procedural due process when a constitutionally protected property or liberty interest is at stake.  See Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  When such interests are implicated, the right to some kind of prior hearing is paramount.  See id.  In evaluating plaintiffs' claims, the Court engages in a two-step inquiry.  First, the Court determines whether plaintiffs possessed an interest to which due process protection applies.  See Camuglia v. City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006) (citing Clark v. City of Draper, 168 F.3d 1185, 1189 (10th Cir. 1999)).  If so, the Court determines whether plaintiffs were afforded an appropriate level of process.  See id.

### A.      Property

Plaintiffs claim that defendant deprived them of constitutionally protected property interests without due process.  Specifically, plaintiffs claim that they had property interests in the right to

---

[3]      Plaintiffs do not specify whether their claim falls under procedural due process, substantive due process or both.  Read in context, it appears that plaintiffs assert procedural due process claims.  To the extent that plaintiffs may be attempting to assert substantive due process claims, their claims fail as a matter of law.  For purposes of substantive due process, legislative and executive governmental functions are distinct, and "criteria to identify what is fatally arbitrary differ depending on whether it is legislation or a specific act of a governmental officer that is at issue." County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998).  Here, plaintiffs assert that a government official abused his power, which requires a showing that the challenged action shocks the conscience of federal judges.  See id. at 846-47; Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006).  Mere negligence is not sufficient, and plaintiffs must do more than show that defendant intentionally or recklessly caused injury by abusing or misusing government power.  See Moore, 438 F.3d at 1040.  Plaintiffs must show a "high level of outrageousness" and a magnitude of potential or actual harm which is truly conscience shocking.  See Uhlrig v. Harder, 64 F.3d 567, 574 (10th Cir. 1995).  On this record, plaintiffs have not alleged facts sufficient to support such a claim.

continued employment and in the right to participate in grievance hearings upon termination from their employment. Property interests arise only when plaintiffs have a legitimate claim of entitlement; unilateral expectations are insufficient. See Roth, 408 U.S. at 577. The Constitution does not create property interests; rather, they arise from independent sources such as state statutes, local ordinances, established rules or mutually explicit understandings. See Perry v. Sindermann, 408 U.S. 593, 601 (1972). The Court determines the existence of a property interest based on state law. See Bishop v. Wood, 426 U.S. 341, 344 (1976). Thus, the Court must determine whether plaintiffs have alleged facts sufficient to support a property interest under Kansas law. See Graham v. City of Okla. City, Okla., 859 F.2d 142, 146 (10th Cir. 1988).

### 1. Right To Continued Employment

Plaintiffs claim that Johnson County policies, custom and practice created an implied contract for continued employment upon satisfactory performance.[4] Kansas law presumes that employment is at will, see Inscho v. Exide Corp., 29 Kan. App.2d 892, 865, 33 P.3d 249, 252 (2001); it will imply a contract of employment, however, if facts and circumstances show mutual intent to contract, see Kastner v. Blue Cross & Blue Shield of Kan., Inc., 21 Kan. App.2d 16, 23, 894 P.2d 909, 915 (1995) (citing Allegri v. Providence-St. Margaret Health Ctr., 9 Kan. App.2d 659, 663, 684 P.2d 1031, 1035 (1984)). The parties' intent is normally a question of fact for the jury. See Morriss v. Coleman Co., 241 Kan. 501, 512, 738 P.2d 841, 848 (1987). Relevant factors include (1) the understanding and intent of the parties; (2) the conduct of the parties; (3) the usages of the business;

---

[4] Plaintiffs claim that the county – not defendant or his predecessors – created the alleged property interests. See Amended Complaint (Doc. #21) ¶¶ 50-58. To the extent plaintiffs might claim that the actions of defendant's predecessors created an implied contract of employment, the Tenth Circuit rejected a similar claim in Dickeson v. Quaberg, 844 F.2d 1435, 1439 (10th Cir. 1988) (applying Wyoming law).

(4) the situation and objective of the parties giving rise to the relationship; (5) the nature of employment; and (6) any other circumstances surrounding the employment relationship which would tend to make clear the intention of the parties at the time the employment relationship commenced. Id. at 513, 738 P.2d at 848-49.  The parties must have mutual intent to enter into an employment contract; plaintiffs' unilateral expectations of continued employment are insufficient.  See Panis v. Mission Hills Bank, N.A., 60 F.3d 1486, 1492 (10th Cir. 1995).

Defendant maintains that under Kansas law, he has sole authority to make personnel decisions for employees working in his office and that Johnson County lacks power to create property interests in plaintiffs' jobs.  Indeed, if Johnson County lacks authority to enter into a contract with plaintiffs for continued employment, plaintiffs cannot make a legitimate claim of entitlement based on Johnson County policy and conduct.  See Kiddy-Brown v. Blagojevich, 408 F.3d 346, 361 (7th Cir. 2005); Polson v. Davis, 635 F. Supp. 1130, 1141 (D. Kan. 1986).  In ruling on defendant's motion to dismiss, the Court accepts plaintiffs' allegations as true, i.e. that to the extent it could legally do so, Johnson County by its policies, custom and practice created an implied contract with plaintiffs for continued employment upon satisfactory job performance.  The Court therefore preliminarily addresses whether Johnson County had authority to enter into such a contract under Kansas law.

Plaintiffs maintain that under Kansas law, the county – not the district attorney – has sole authority to terminate district attorney employees.  See Plaintiffs' Memorandum In Opposition To Defendant's Motion To Dismiss ("Plaintiffs' Opposition") (Doc. #22) filed February 23, 2007 at 14-18.  Kansas law is unclear on this point.  The county pays the salaries of the district attorney and his staff.  See K.S.A. §§ 22a-105, 22a-106(a).  Kansas law, however, states that a district attorney is a

11

state officer and "in no event shall . . . be deemed an officer of any county." K.S.A. §§ 25-2505(b), 22a-101, 22a-108. The Kansas attorney general has interpreted these statutory provisions as "clear indication" that the district attorney and his agents are employees of the state – as opposed to the county – for purposes of the Kansas Tort Claims Act.[5] See XXI Kan. Op. Att'y Gen. 5, No. 87-13 (January 22, 1987) (Stephan).[6] This Court has reached a similar conclusion regarding Eleventh Amendment immunity. See Oltremari v. Kan. Soc. & Rehabilitative Serv., 871 F. Supp. 1331, 1347 (D. Kan. 1994). For other purposes, however, district attorney employees are considered employees of the county. See Stuart v. Douglas County, Kan., 21 Kan. App.2d 784, 788, 907 P.2d 919, 922 (1995) (workers compensation); Kan. Att'y Gen. Op. No. 80-26 (January 30, 1980) (Stephan) (Kansas Public Employees Retirement System).

K.S.A. § 22a-106 provides that district attorneys shall appoint and determine the annual compensation of "assistant district attorneys, deputy district attorneys and other stenographic, investigative and clerical hire as may be necessary to carry out the functions of the district attorney's office." K.S.A. § 22a-106.[7] The statute, however, is silent whether district attorneys have authority

---

[5]     Attorney general opinions constitute persuasive authority but are not binding on the Court. See Bd. of County Comm'rs v. Nielander, 275 Kan. 257, 268, 62 P.3d 247, 255 (2003).

[6]     Although defendant previously served as Kansas Attorney General, he did not author any of the attorney general opinions cited herein.

[7]     Section 22a-106 provides as follows:

(a) Within the limits of appropriations therefor, the district attorney shall appoint such assistant district attorneys, deputy district attorneys and other stenographic, investigative and clerical hire as may be necessary to carry out the functions of the district attorney's office in such judicial district, and he shall determine the annual compensation of each assistant district attorney and other persons appointed pursuant to this subsection. The county commissioners shall determine and allow such reasonable sums from funds of the county for the compensation of assistants,

(continued...)

to discharge employees.  Plaintiffs maintain that this silence demonstrates that district attorneys do not have authority to dismiss employees.  Defendant, on the other hand, contends that the statutory power to hire includes by necessary implication the power to fire.  Kansas courts have not addressed this issue.  In 1992, the Kansas Attorney General opined that county attorneys have complete discretion to hire and fire personnel (so long as such measures do not go beyond the budget allotted by the county) and that county attorneys are not bound by county personnel policies and procedures.[8]

---

[7](...continued)
deputies and other stenographic, investigative and clerical hire and for other expenses of such office as may be necessary to carry out the function of such office.

(b) Each assistant and deputy district attorney shall have been regularly admitted to practice law within the state of Kansas prior to his appointment. Each district attorney and his assistant district attorneys shall devote full time to official duties and shall not engage in the civil practice of law, except as required in performing his official duties while serving as district attorney or assistant district attorney, and shall not refer any client or other person or any matter to any designated attorney or firm of attorneys.

(c) The board of county commissioners of each county contained in judicial districts 3, 10, 18 and 29 shall provide suitable office space within such county for the district attorney, his assistants, deputies, office personnel and equipment.

(d) Notwithstanding any of the provisions of this act the district attorney, with the approval of the board of county commissioners, may appoint and employ special counsel when necessary to assist the district attorney in the discharge of his duties, such special counsel not to be subject to the restrictions contained in paragraph (b) herein.

(e) Any county contained in judicial districts 3, 10, 18 or 29 may receive and expend for the operation of the office of district attorney any federal moneys made available therefor.

K.S.A. § 22a-106.

[8]       Under K.S.A. § 22a-107, the terms "county attorney" and "district attorney" are synonymous unless the context otherwise requires.

See XXVI Kan. Op. Att'y Gen. 61, No. 92-158 (December 17, 1992) (Stephan).  In reaching this conclusion, the attorney general noted that the state legislature had considered but rejected (without explanation) an amendment which would apply county personnel policies and procedures to any personnel action taken by a county attorney.  See id. (citing Senate Bill No. 46, 1983 legislative session).[9]  The attorney general surmised that the legislature deleted the amendment because under the rules of professional conduct, an attorney is ultimately responsible for the ethical conduct of his or her subordinate employees and, therefore, the county attorney must have control over personnel to ensure conformance with ethical rules.  See id.

In Nielander, the Kansas Supreme Court ruled that a sheriff – not the county – has authority to dismiss a deputy sheriff.  275 Kan. at 261-62, 62 P.3d at 251.  Sheriffs are similar to district attorneys in that both are state officers funded by the county but not subordinate thereto.  See id. at 261, 62 P.3d at 251.  The statute regarding sheriffs, however, differs from the district attorney statute, in that the sheriff statute provides express authority to appoint and dismiss deputies while the district attorney statute provides express authority to appoint assistant district attorneys but is silent regarding authority to dismiss them.  Also, the sheriff statute provides that a sheriff's personnel action is subject to county personnel policies and procedures while the district attorney statute is silent in this regard.  Compare K.S.A. § 19-805,[10] with K.S.A. § 22a-106.  The Kansas

---

[9]    The legislature passed the amendment for statutes dealing with the county clerk, county register of deeds, county treasurer and county sheriff.  See id.

[10]    K.S.A. § 19-805 provides as follows:

(a) In addition to the undersheriff, the sheriff also may appoint, promote, demote and *dismiss* additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible.  Persons may also be

(continued...)

14

Supreme Court found that even though the sheriff statute provides that county policies and procedures apply to sheriff personnel actions, the county cannot supercede a sheriff's power to appoint, promote, demote or dismiss personnel.  See Nielander, 275 Kan. at 267, 62 P.3d at 254. Although Nielander involved a different statute, it suggests that to the extent K.S.A. § 22a-106 grants district attorneys power to dismiss employees, the Kansas Supreme Court would find that the county cannot supercede that power.

K.S.A. § 22a-106 does not provide express authority for district attorneys to dismiss personnel.  The Court, however, believes that Kansas courts would find that the statutory power to appoint personnel includes by implication the authority to remove personnel.  See, e.g., Crowley v. City of Burlingame, Kan., 352 F. Supp.2d 1176, 1185 (D. Kan. 2005); see also Snyder v. City of

---

[10](...continued)
deputized by such sheriff or undersheriff, in writing, to do particular acts.  The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies.

(b) Within the limitations of the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners, the sheriff may attend and may require the undersheriff, deputies and any assistants to attend any meeting or seminars which the sheriff determines will be beneficial to the operation of the sheriff's office.

(c) The sheriff shall submit a budget for the financing of the operation of the sheriff's office to the board of county commissioners for their approval.

(d) Any personnel action taken by the sheriff under this section shall be subject to the following: *(1) Personnel policies and procedures established by the board of county commissioners for all county employees other than elected officials;* (2) any pay plan established by the board of county commissioners for all county employees other than elected officials; (3) any applicable collective bargaining agreements or civil service system; and (4) the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners.

K.S.A. § 19-805 (emphasis added).

Moab, 354 F.3d 1179, 1190-91 (10th Cir. 2003) (applying Utah law); Dickeson, 844 F.2d at 1439 (applying Wyoming law). This is particularly so in light of the fact that the district attorney is an officer of the state, not the county, see K.S.A. §§ 25-2505(b), 22a-101, 22a-108, and the fact that K.S.A. § 22a-106 – unlike other Kansas statutes – does not contain a provision which subjects district attorney personnel decisions to county policies and procedures. Compare K.S.A. § 22a-106, with K.S.A. §§ 19-302 (county clerk), 19-503 (county treasurer), 19-805 (sheriff) and 19-1202 (register of deeds). Under these circumstances, it appears that Johnson County lacks authority to override the district attorney's decision to discharge personnel. Accordingly, Johnson County does not have authority to create an implied contract with plaintiffs for continued employment. Consequently, plaintiffs have not alleged facts sufficient to support a claim for deprivation of a property interest in continued employment. Defendant is entitled to qualified immunity on this claim.[11]

### 2.   Right To Participate In Grievance Hearings

Plaintiffs claim that defendant interfered with their right to a grievance hearing with Johnson County. According to plaintiffs, Johnson County policy, custom and practice created an implied contract which entitled them to participate in grievance hearings upon termination of their employment. See Amended Complaint (Doc. #21) ¶¶ 53-54. Plaintiffs assert that the county informed defendant that it would not provide the hearings unless he agreed to participate and abide by the results thereto and that defendant refused to do so, thereby depriving plaintiffs of their

---

[11]   Moreover, even if Kansas courts would find that the county has authority to discharge district attorney employees, defendant would be entitled to qualified immunity because the law was not clearly established at the time of the alleged violation. See Greene v. Barrett, 174 F.3d 1136, 1142-43 (10th Cir. 1999); Jones v. City of Topeka, 790 F. Supp. 256, 260 (D. Kan. 1992); see also Aspinwall v. Herrin, 879 F. Supp. 1227, 1234-35 (S.D. Ga. 1994).

constitutional right to a hearing.  See id. ¶¶ 26-27, 80-82.

In Carnes v. Parker, 922 F.2d 1506, 1511 (10th Cir. 1991), the Tenth Circuit recognized that although procedural protections alone are insufficient to create a property interest in continued employment, they can sustain an entitlement to the procedures themselves.  See id. (citing Vinyard v. King, 728 F.2d 428, 432 n. 15 (10th Cir. 1984); Asbill v. Housing Auth. of Choctaw Nation of Okla., 726 F.2d 1499, 1501-02 (10th Cir. 1984)).  Even so, plaintiffs do not allege that defendant interfered with or deprived them of the right to participate in Johnson County grievance hearings.  Plaintiffs merely assert that the county informed defendant that it would not hold the hearings unless defendant participated therein and agreed to abide by the results thereto.  See Amended Complaint (Doc. #21) ¶ 26.  Plaintiffs do not allege facts which establish that the County had authority to require defendant to participate in the hearings or abide by the outcome.  As discussed above, under Kansas law defendant is an officer of the state with complete discretion to discharge employees, and Johnson County lacks authority to override such decision.  On this record, plaintiffs have not alleged facts sufficient to establish that defendant (as opposed to the county) deprived them of the right to participate in Johnson County grievance hearings.[12]  Defendant is therefore entitled to qualified immunity on this claim.

**B.      Liberty**

---

[12]      Although Johnson County lacks authority to reinstate plaintiffs, it apparently has authority to conduct the grievance hearings and determine whether plaintiffs are eligible for future county employment.  In overruling plaintiffs' motion for a temporary restraining order, the Court noted that the county was apparently free to proceed with grievance hearings with or without defendant's participation.  See Order (Doc. #15) filed February 1, 2007 at 8.  Plaintiffs in fact have informed the Court that the county has now held the grievance hearings without defendant's participation.  See Plaintiffs' Memorandum In Opposition To Defendant's Motion To Dismiss Amended Complaint (Doc. #27) filed March 14, 2007 at 1.

Plaintiffs claim that defendant deprived them of liberty because their dismissals created clouds over their ability to obtain re-employment with Johnson County and/or to obtain licenses to practice law in the State of Missouri.  See Amended Complaint (Doc. #21) ¶ 79; Plaintiffs' Opposition (Doc. #22) at 9-10.  Defendant asserts that plaintiffs have not sufficiently alleged deprivation of a constitutionally protected liberty interest.  The concept of liberty recognizes two interests of a public employee: (1) protection of his or her good name, reputation, honor and integrity; and (2) freedom to take advantage of other employment opportunities.  See Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  To state a claim for deprivation of a liberty interest, plaintiffs must allege that their terminations were based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage their standing or association in the community and foreclose their freedom to take advantage of future employment opportunities.  See Garcia v. City of Albuquerque, 232 F.3d 760, 772 (10th Cir. 2000) (citing Palmer v. City of Monticello, 31 F.3d 1499, 1503 (10th Cir. 1994); Melton v. City of Okla. City, 928 F.2d 920, 927 (10th Cir. 1991)).  Specifically, plaintiffs must allege that (1) defendant made a statement impugning their good name, reputation, honor, or integrity; (2) the statement was false; (3) defendant made the statement in the course of termination proceedings, or the statement foreclosed future employment opportunities; and (4) the statement was published.  See Garcia, 232 F.3d at 772 (citing Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 526 (10th Cir. 1998)).

Plaintiffs allege that defendant made statements in a press release and in a letter to county counselor Jarrett.  Plaintiffs, however, do not allege that defendant made a statement impugning their

18

good name, reputation, honor, or integrity, or that any such statement was false.[13]  This omission is fatal to plaintiffs' claim.  See Conaway, 853 F.2d at 794; Dickeson, 844 F.2d at 1439; Asbill, 726 F.2d at 1503-04.  Plaintiffs apparently rest their claim on the mere fact of discharge, i.e. that the discharge itself infringes their ability to obtain future employment.  The courts, however, have squarely rejected the argument that such a discharge infringes a protected liberty interest.  See Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 84 (1978); Lancaster v. Indep. Sch. Dist. No. 5, 149 F.3d 1228, 1235 (10th Cir. 1998); Gillespie v. City of Macon, Miss., 485 F. Supp.2d 722, 725 (S.D. Miss. 2007); Karr v. Castle, 768 F. Supp. 1087, 1098 (D. Del. 1991).  On this record, plaintiffs have not alleged facts sufficient to establish deprivation of a constitutionally protected liberty interest. Defendant is entitled to qualified immunity on this claim.

**II.**    **First Amendment Claims**

Plaintiffs claim that defendant violated their First Amendment rights in two ways.  First, plaintiffs assert that defendant violated their free association rights by firing them because they did not have personal or political affiliations with him.  Second, plaintiffs claim that defendant violated their free speech rights by retaliating against them due to information which they communicated in their dispute resolution forms.  Defendant asserts that he is entitled to qualified immunity on both claims.

**A.**    **Free Association**

Plaintiffs claim that defendant fired them because they did not have personal or political affiliations with him.  See Amended Complaint (Doc. #21) ¶ 90.  The First Amendment protects

---

[13]    With regard to the press release, plaintiffs allege only that "[a] press release issued by or on behalf of Defendant referred to Johnson County's Policies and included a quoted excerpt from the policies."  Amended Complaint (Doc. #21) ¶ 30.

public employees from discrimination based on political beliefs, affiliation or non-affiliation, unless their work requires political allegiance. See Snyder, 354 F.3d at 1184 (citing Mason v. Okla. Tpk. Auth., 115 F.3d 1442, 1451 (10th Cir. 1997)). Whether political association is an appropriate job requirement is normally a question of fact; however that question may be resolved as a matter of law if the facts regarding the nature of the position duties are undisputed. See Snyder, 354 F.3d at 1185 (citing Barker v. City of Del City, 215 F.3d 1134, 1138 (10th Cir. 2000)). Defendant bears the burden of proving that political association is an appropriate requirement for effective performance of the public office involved. See id. Thus, if defendant can demonstrate that party affiliation is an appropriate requirement for effective performance of plaintiffs' jobs, he may fire them based on political allegiance without violating the First Amendment. See Branti v. Finkel, 445 U.S. 507, 518 (1980).

Defendant maintains that political affiliation is an appropriate requirement for attorneys and investigators in the district attorney office. In determining whether political allegiance is a proper job requirement, the Court looks to the nature of employee duties and responsibilities. See Snyder, 354 F.3d at 1185 (citing Barker, 215 F.3d at 1138). The Court must analyze the whole picture; no one specific factor is necessary to justify a political allegiance requirement. See Snyder, 354 F.3d at 1185 (citing McCloud v. Testa, 97 F.3d 1536 (6th Cir. 1996)). In Elrod v. Burns, 427 U.S. 347, 367 (1976) (plurality opinion), the Supreme Court noted that "no clear line can be drawn" between positions which require political allegiance and those which do not. The Supreme Court stated as follows:

> The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities, but those responsibilities may have only limited and well-defined objectives. An employee with responsibilities that are not well defined or are of broad scope more likely functions in a policymaking position. In

determining whether an employee occupies a policymaking position, consideration would also be given to whether the employee acts as an adviser or formulates plans for the implementation of broad goals. Thus, the political loyalty justification is a matter of proof, or at least argument, directed at particular kinds of jobs.

Id. at 367-68 (quotation marks and citations omitted). In close cases, the Court should resolve any doubt in favor of the public employee subject to dismissal. See Jantzen v. Hawkins, 188 F.3d 1247, 1253 (10th Cir. 1999) (citing Dickeson, 844 F.2d at 1442).

Defendant asserts that seven federal circuit courts have ruled that political affiliation is an appropriate job requirement for assistant district attorneys. See Defendant's Memorandum In Support Of Motion To Dismiss ("Defendant's Memorandum") (Doc. #14) filed February 1, 2007 at 12-13 (citing Gordon v. County of Rockland, 110 F.3d 886, 890-91 (2d Cir. 1997); Mummau v. Ranck, 687 F.2d 9, 10 (3d Cir. 1982); Clark v. Brown, 861 F.2d 66, 68 (4th Cir. 1988); Aucoin v. Haney, 306 F.3d 268, 276 (5th Cir. 2002); Williams v. City of River Rouge, 909 F.2d 151, 155 (6th Cir. 1990); Livas v. Petka, 711 F.2d 798, 800 (7th Cir. 1983); Fazio v. City & County of San Francisco, 125 F.3d 1328, 1334 (9th Cir. 1997)). With one exception, those cases were decided on summary judgment or after trial.[14] Thus, the courts had evidence upon which to determine the nature of plaintiffs' job responsibilities.[15]

---

[14]     One case, Clark, was decided on a motion to dismiss. In that case, the Fourth Circuit decided that in 1986, the law did not clearly prohibit firing assistant district attorneys for political reasons. 861 F.2d at 68. The Fourth Circuit granted defendant qualified immunity on this issue and did not determine whether political patronage was an appropriate requirement for the job. See id.

[15]     See Gordon, 110 F.3d at 891-92 (due to broad discretion and authority to act on behalf of county, assistant county attorneys politically accountable to county); Mammau, 687 F.2d at 10 (affirming summary judgment in favor of defendants); Aucoin, 306 F.3d at 275-76 (defendant entitled to qualified immunity where Louisiana law vests assistant district attorneys broad discretion and assistant district attorneys are representatives of and perform same functions as district (continued...)

Here, the record contains no evidence regarding plaintiffs' job duties.  Seven plaintiffs, Allen, Barton, Clark, Fritz, Gray, Howe and Lewison, worked as attorneys in the district attorney office.[16]  Plaintiff Denton worked as chief investigator in the same office.  Defendant asserts that political allegiance is a proper requirement for these positions, but he provides no evidence to support his assertion.  See Defendant's Memorandum (Doc. #14) at 13.[17]  In ruling on defendant's motion to dismiss, the Court accepts as true plaintiffs' allegation that defendant fired them because they were not politically affiliated with him.  Thus, defendant bears the burden to show that political association was an appropriate requirement for effective performance of their jobs.  See Snyder, 354 F.3d at 1185.  Absent such evidence, the Court concludes that plaintiffs have sufficiently alleged deprivation of their constitutional rights to free association.  The law is clearly established that the First Amendment prohibits dismissing an employee based on political association unless defendant

---

[15](...continued)
attorney); Williams, 909 F.2d at 154-55 (duties inherent in city attorney position show that confidence and trust of mayor and council necessary to effective performance of job); Livas, 711 F.2d at 800-01 (assistant prosecutors implement prosecutor's policies and make decisions which create policy); Fazio, 125 F.3d at 1334 (assistant district attorney handled high profile cases and was often quoted by media on matters of public interest).

[16]     Although defendant refers to plaintiffs as assistant district attorneys, their complaint alleges only that they worked as attorneys in the district attorney office.  See Amended Complaint (Doc. #21) ¶¶ 4-6, 8-11.

[17]     Defendant contends that K.S.A. § 22a-104(a) defines the job duties and responsibilities of an assistant district attorney.  See Defendant's Reply To Plaintiffs' Opposition To Defendant's Motion To Dismiss (Doc. #24) filed March 9, 2007 at 10.  The statute provides that "it shall be the duty of the district attorney to appear in the several courts of the judicial district . . . and to prosecute or defend, on behalf of the people therein, all matters arising under the laws of this state, and such civil matters as are instituted by the district attorney . . . .  Any power or duty now conferred or imposed by law upon all county attorneys within their respective counties shall be exercised or performed by district attorneys within their respective districts, or by any of their assistants or deputies provided for in this act."  K.S.A. § 22a-104(a).  This statute, standing alone, does not come close to establishing that political allegiance is an appropriate requirement for effective performance by assistant district attorneys

22

can show that political allegiance is a proper requirement for effective performance of the position.
See Branti, 445 U.S. at 516-18; Kiddy-Brown, 408 F.3d at 357; Bass v. Richards, 308 F.3d 1081,
1090 (10th Cir. 2002).  Accordingly, on this record, defendant is not entitled to qualified immunity
on this claim.[18]

### B.   Free Speech

Plaintiffs contend that defendant retaliated against them because they submitted dispute
resolution forms which contained communications protected by the First Amendment.  Specifically,
plaintiffs contend that in retaliation for such communications, defendant refused to participate in
Johnson County grievance hearings and repudiated plaintiffs' right to such hearings.  See Amended
Complaint (Doc. #21) ¶¶ 98-99.  Defendant asserts that plaintiffs cannot establish a constitutional
violation because their speech did not involve a matter of public concern.  When a government
employer takes adverse action because an employee has exercised his or her right to free speech, the
Court applies the Garcetti/Pickering test to determine whether the employee has established a prima
facie case of retaliation.  See Brammer-Hoelter v. Twin Peaks Charter Acad., — F.3d —, No. 06-
1186, 2007 WL 2007546, at **4-5 (10th Cir. July 12, 2007) (citing Garcetti v. Ceballos, 126 S. Ct.
1951 (2006); Pickering v. Bd. of Educ. of Topeka High Sch. Dist., 391 U.S. 563 (1968)).[19]  The five-

---

[18]      The Court acknowledges that further development of the factual record might support
a different result.  See, e.g., Kiddy-Brown, 408 F.3d at 357 (court may revisit qualified immunity
issue after resolving factual allegations regarding duties of position); McCloud, 97 F.3d at 1550-51
(defendant may be entitled to qualified immunity depending on facts regarding plaintiff's position);
Kenney v. Charnock, 441 F. Supp.2d 769, 775 (S.D.W. Va. 2006) (court cannot determine whether
law clearly established; further discovery needed whether political patronage appropriate
requirement for investigator in county prosecutor office).

[19]      Both plaintiffs and defendant frame their arguments under the balancing test set forth
in Pickering, regarding free speech rights of government employees, and do not mention the Garcetti
(continued...)

23

part test requires the Court to examine the following issues:

1.　　Did the employee speak pursuant to his or her official duties?  If so, the speech is unprotected and the inquiry ends.[20]

2.　　If the employee did not speak pursuant to his or her official duties, did the speech in question involve a matter of public concern?  If not, the speech is unprotected and the inquiry ends.

3.　　If the speech involved a matter of public concern, does the employee's interest in the expression outweigh the government employer's interest in regulating the speech of its employees so that it can carry on an efficient and effective workplace?  If not, the speech is unprotected and the inquiry ends.

4.　　If the employee's interest outweighs that of the employer, was the employee's speech a substantial factor driving the challenged employment action?  If not, the inquiry ends.

5.　　If the employee shows that speech was a motivating factor, can the employer show that it would have taken the same employment action against the employee absent the protected speech?  If so, plaintiff is not entitled to constitutional protection.

See Brammer-Hoelter, 2007 WL 2007546, at **4-5.  The first three issues are questions of law for the Court, while the final two questions are ordinarily for the trier of fact.  See id.

Defendant contends that plaintiffs cannot satisfy the second element, i.e. that plaintiffs' statements did not involve a matter of public concern.  "Matters of public concern are those of

---

[19](...continued)
decision which modified that test.  See Defendant's Memorandum (Doc. #14) at 13-16; Plaintiffs' Opposition (Doc. #22) at 20-23.  Moreover, the parties do not address whether the test applies to plaintiffs' claims here, where the alleged retaliation occurred after their discharge from employment, i.e. when they were no longer government employees.  Because plaintiffs' claims arise in the employment context, and because neither party contends that another standard applies, the Court will apply the Garcetti/Pickering test to plaintiffs' claims.

[20]　　The parties do not address whether plaintiffs spoke pursuant to their official job duties.  See Garcetti, 126 S. Ct. at 1961 (employee speech not protected if made in course of performing official job duties).  For purposes of ruling on defendant's motion to dismiss, the Court therefore assumes that plaintiffs did not speak pursuant to their job duties.

interest to the community, whether for social, political or other reasons." Dill v. City of Edmond, Okla., 155 F.3d 1193, 1201 (10th Cir. 1998). Speech which relates to internal personnel disputes and working conditions ordinarily does not involve a matter of public concern; however, speech which seeks to expose improper government operations or questions the integrity of governmental officials clearly concerns vital public interests. See Finn v. New Mexico, 249 F.3d 1241, 1247 (10th Cir. 2001) (quoting Conaway, 853 F.2d at 797). The essential question is "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." Edwards v. City of Goldsboro, 178 F.3d 231, 247 (4th Cir. 1999) (internal quotation and citation omitted). In performing this inquiry, the Court considers the content, form and context of plaintiffs' statements. See Connick v. Myers, 461 U.S. 138, 147-48 (1983).

To determine whether plaintiffs' speech addresses personal grievances or a broader public purpose, courts focus on the speakers' motive. See Gardetto v. Mason, 100 F.3d 803, 812 (10th Cir. 1996) (citing Conaway, 853 F.2d at 796). Speech aimed at exposing improper operations or questioning the integrity of government officials clearly concerns public interests.[21] See Conaway, 853 F.2d at 796. In contrast, speech regarding "internal personnel disputes" ordinarily will not involve a public concern. See id. (citing Connick, 461 U.S. at 146). Similarly, criticisms of internal management decisions, and complaints addressing the structure of purely internal administrative bodies, do not reflect public concerns. See Gardetto, 100 F.3d at 813–14 (details of internal

---

[21]    When deciding whether speech qualifies as a matter of public concern, courts customarily focus on whether speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties. See Patrick v. Miller, 953 F.2d 1240, 1248 (10th Cir. 1992).

budgetary allocations not matters of public concern). The analysis includes scrutinizing whether the speakers' purpose was to bring an issue to public attention or to air a personal grievance. See Schrier v. Univ. of Colo., 427 F.3d 1253, 1263 (10th Cir. 2005) (citing McEvoy v. Shoemaker, 882 F.2d 463, 466 (10th Cir. 1989). The employees' speech must not merely relate generally to a subject matter that is of public interest, but must "sufficiently inform the issue as to be helpful to the public in evaluating the conduct of government." See id. (quoting Wilson v. City of Littleton, Colo., 732 F.2d 765, 768 (10th Cir. 1984); see also Koch v. City of Hutchinson, Kan., 847 F.2d 1436, 1445-47 (10th Cir. 1988) (en banc) (reaffirming Wilson). The Court looks beyond the general topic of the speech to evaluate more specifically what was said on the topic.

Here, plaintiffs stated the following in their dispute resolutions forms:

> I was dismissed without warning, without the benefit of property rights granted in . . . Johnson County Human Resources Policies and Procedures, and as a result deprived me [sic] of property without due process of law in violation of Section 1 of the 14th Amendment to the United States Constitution. To the extent that my affiliation with former District Attorney Paul Morrison contributed to the decision, I have been deprived of my freedom of association in violation of the 14th Amendment to the United States Constitution. In addition to the violations of my constitutional rights, the County a) breached an implied contract to act fairly and not terminate the employment of persons who satisfactorily perform their job . . . and b) breached a covenant of good faith and fair dealing regarding employees whose positions are necessary for public safety and the administration of the criminal justice system, and c) violated public policy by interfering with the administration of the criminal justice system through the immediate terminations of persons essential to the operation of the criminal justice system, and d) failed to properly supervise employees, Phill Kline and Eric Rucker by allowing them to recklessly terminate employees contrary to the public interest, and e) to the extent that the actions of Phill Kline and Eric Rucker were motivated in whole or in part by my enforcement of criminal and/or juvenile statutes of the State of Kansas [sic].

Exhibits 9-16, Amended Complaint (Doc. #21).

Defendant contends that plaintiffs' statements were motivated by personal grievances regarding internal department affairs and personal interest, and not matters of public interest. That

some of plaintiffs' statements may involve matters of personal interest is not dispositive, so long as some portion of the speech touches on matters of public concern. See Finn, 249 F.3d at 1248. In Connick, the United States Supreme Court recognized a demonstrated interest in this country "that government service should depend upon meritorious performance rather than political service." 461 U.S. at 150. Under this authority, plaintiffs' assertion that their affiliation with the former district attorney may have contributed to the termination decision clearly involves a matter of public concern. In addition, construed broadly, plaintiffs' allegation that defendant abruptly terminated a large number of employees whose positions were necessary for public safety and the administration of the criminal justice system involves matters of public concern. See, e.g., Lee v. Nicholl, 197 F.3d 1291, 1296 (10th Cir. 1999). Accordingly, on this record, plaintiffs have alleged facts sufficient to satisfy the second prong of the Garcetti/Pickering test.

As to the third element, defendant does not contend that plaintiffs' expression interfered with the government's interest in carrying on an efficient and effective workplace. Accordingly, for purposes of ruling on defendant's motion to dismiss, plaintiff has satisfied the third prong of the Garcetti/Pickering test.

Defendant contends that plaintiffs cannot satisfy the fourth prong, i.e. that plaintiffs cannot show that they did not receive grievance hearings because of their statements. The Court agrees. As discussed above, under Kansas law defendant is an officer of the state with complete discretion to discharge employees, and Johnson County lacks authority to override such decision. Therefore, even if true, plaintiffs' allegations do not establish that defendant interfered with or deprived them of any right to a grievance hearing with Johnson County. See, e.g., Hom v. Squire, 81 F.3d 969, 974 (10th Cir. 1996) (plaintiff must show causal connection between protected speech and adverse

employment action).  On this record, defendant is entitled to qualified immunity on plaintiffs' claim that he deprived them of the right to participate in grievance hearings because of protected speech.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion To Dismiss Amended Complaint</u> (Doc. #25) filed March 9, 2007 be and hereby is **SUSTAINED in part.**  Defendant is entitled to qualified immunity on plaintiffs' claims that he (1) deprived them of property and liberty interests without due process (Count I); and (2) retaliated against them for protected speech (Count III). Plaintiffs' claim that defendant violated their constitutional right to free association remains pending against defendant in his individual capacity (Count II).  In addition, plaintiffs' claims against defendant in his official capacity (Counts I, II and III) remain in the case.

**IT IS FURTHER ORDERED** that the Magistrate set this matter for a scheduling conference as soon as possible.

Dated this 23rd day of August, 2007 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

28